367 F.2d 685
 Martha R. SCHINE, Donald G. Schine and Dorene S. Higier, in their individual capacities and as Executors and Trustees under the Will of Louis W. Schine, Deceased, Plaintiffs-Appellees,
v.
J. Myer SCHINE, G. David Schine and C. Richard Schine, Defendants-Appellants.
 No. 117.
 Docket 30614.
 United States Court of Appeals Second Circuit.
 Argued September 29, 1966.
 Decided October 26, 1966.
 
 Walter S. Beck, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, and Neil A. Pollio, New York City, on the brief), for plaintiffs-appellees.
 Herman L. Weisman, New York City (Amen, Weisman & Butler, and Robert S. Persky and Herbert F. Roth, New York City, on the brief), for C. Richard Schine, appellant.
 Simon H. Rifkind and Edward N. Costikyan, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief for J. Myer Schine, appellant.
 Before LUMBARD, Chief Judge, and FRIENDLY and FEINBERG, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 The defendants appeal from an order of Judge Frankel in the District Court for the Southern District of New York which denied their motion for a prior separate trial of their counterclaim for an injunction against the trial of plaintiffs' action on the ground that it is barred by a release. We hold that the order is not appealable, and dismiss the appeal.
 
 
 2
 This action stems from the sale by plaintiffs, all members of the Schine family, of their 37.6% of the common stock of Schine Enterprises, Inc. to the defendants, other members of the Schine family who owned the remainder of Enterprises' common, for the sum of $5,332,000. The first and third claims of plaintiffs' complaint charge that defendants brought about the sale for a "wholly inadequate sum" by conspiratorial and fraudulent acts and failures to disclose, in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and of Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs' second and fourth claims set out that the same acts and failures to disclose violated the fiduciary duty which defendants, as officers, directors, and majority stockholders of Enterprises, owed to plaintiffs. The first and second claims seek damages of $15,000,000, and the third and fourth seek an accounting of profits.
 
 
 3
 Defendants initially moved before Judge Weinfeld, inter alia, for summary judgment based upon a release given by plaintiffs to defendants at the closing of the sale, which released defendants from all claims, "including but not limited to any claims arising by reason of any willful misrepresentation of the values of properties (or of any offers made for the purchase of the same) owned by [Enterprises and its affiliated corporations]," and "including but not limited to contract and tort, including fraud, liability." Judge Weinfeld denied summary judgment, holding that the intended scope of the release was ambiguous and could be clarified by parol evidence at trial. 250 F.Supp. 822 (S.D.N.Y.1966).
 
 
 4
 Defendants then amended their answer, and added the counterclaim for specific performance of the release through the injunction against plaintiffs' prosecution of this or any other action against defendants, and moved for a separate trial of their counterclaim before trial of the main action. Judge Frankel denied this motion on the ground that all the facts alleged in plaintiffs' complaint bore upon the interpretation and validity of the release, so that a separate trial of the counterclaim promised waste, not economy, of litigation. 254 F.Supp. 986 (S.D.N.Y.1966). It is from this denial that defendants have appealed.
 
 
 5
 Appellants argue that Judge Frankel's order is appealable under 28 U.S.C. § 1292(a) (1) as an order refusing an injunction. In practical effect, Judge Frankel did not refuse an injunction; he merely refused to try defendants' defense before plaintiffs' action. His ruling was a matter of common, garden-variety district court housekeeping, an exercise of the district court's broad discretion in controlling the order of developing facts and issues at trial.
 
 
 6
 Appellants contend, however, that Judge Frankel's order should be treated as one refusing an injunction under the doctrine of Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935). Enelow held that a grant or refusal of a stay of the trial of a legal action so that an equitable counterclaim may be tried first is appealable, because before the (then partial) merger of federal law and equity the action would have been pending in a court of law and the counterclaim in a court of equity, and
 
 
 7
 "[t]he power to stay proceedings in another court appertains distinctively to equity in the enforcement of equitable principles, and the grant or refusal of such a stay by a court of equity of proceedings at law is a grant or refusal of an injunction within the meaning of [§ 1292]."
 
 
 8
 293 U.S. at 382, 55 S.Ct. at 311. It has been argued that this concept of such a stay as an interlocutory injunction is anomalous after the subsequent complete merger of law and equity in 1938 by the Federal Rules of Civil Procedure. See, e. g., 5 Moore, Federal Practice ¶ 39.13 [2] (2d ed. 1964); Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 373-375 (1961). Nevertheless, the Supreme Court reaffirmed the Enelow doctrine after the promulgation of the Federal Rules. Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942).
 
 
 9
 The Supreme Court has refused, however, to extend the Enelow-Ettelson doctrine beyond the limits indicated by the rationale of the Enelow opinion. In particular, it has not analogized the grant or refusal of a stay to an injunction where the whole case, before the merger of law and equity, would have been before a court of equity, so that no stay of "proceedings in another court" would have been involved. Thus, where plaintiff's action would have been in equity, the grant or denial of a stay pending trial of a counterclaim, legal or equitable, is not appealable under the Enelow-Ettelson doctrine. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 182-185, 75 S.Ct. 249, 99 L.Ed. 233 (1955) (equitable counterclaim); City of Morgantown v. Royal Ins. Co., Ltd., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949) (legal counterclaim).
 
 
 10
 This principle controls this case. Plaintiffs' fourth claim, for an accounting based on defendants' alleged breaches of their fiduciary duty as officers, directors, and majority stockholders, would have been cognizable in equity before the merger of law and equity. See, e. g., Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328 (1876); 4 Pomeroy, Equity Jurisprudence § 1421 (5th ed. Symons 1941). Having jurisdiction of the fourth claim, a court of equity would have taken jurisdiction of plaintiffs' first three claims as well, under the principle often enunciated by the Supreme Court before the merger of law and equity that, "having properly acquired jurisdiction of a cause for any purpose, it should dispose of the entire controversy and its incidents, and not remit any part of it to a court of law." Greene v. Louisville & Interurban R.R., 244 U.S. 499, 520, 37 S.Ct. 673, 682, 61 L.Ed. 1280 (1917); Camp v. Boyd, 229 U.S. 530, 551-552, 33 S.Ct. 785, 57 L.Ed. 1317 (1913); cf. Alexander v. Hillman, 296 U.S. 222, 242, 56 S.Ct. 204, 80 L.Ed. 192 (1935). This principle applied, in particular, where equity jurisdiction was based upon a suit for an accounting, as here. McMullen Lumber Co. v. Strother, 136 F. 295, 305 (8th Cir. 1905); 1 Pomeroy, Equity Jurisprudence § 231 n. 11 (5th ed. Symons 1941). Thus plaintiffs' whole complaint would have been before a court of equity when defendants made their equitable counterclaim, there would have been no occasion to stay "proceedings in another court," and Judge Frankel's denial of a stay is therefore not appealable under the Enelow-Ettelson doctrine.[1]
 
 
 11
 Our order does not mean that appellate review of the propriety of granting or denying a separate trial of a counterclaim can never be obtained in a case like this one. If a grant or denial of a separate trial has prejudicially affected the outcome of a case, it may be appealed after a final decision. Cf., e. g., Bowie v. Sorrell, 209 F.2d 49, 43 A.L.R.2d 781 (4th Cir. 1953).
 
 
 12
 Furthermore, an interlocutory appeal may be taken from such a grant or denial under the Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b), if the district judge making the order certifies that in his opinion it "involves a controlling question of law as to which there is substantial ground for difference of opinion," and that "an immediate appeal may materially advance the ultimate termination of the litigation," and the Court of Appeals in its discretion grants the appeal. See United Air Lines, Inc. v. Wiener, 286 F.2d 302 (9 Cir.), cert. denied, 366 U.S. 924, 81 S.Ct. 1352, 6 L. Ed.2d 384 (1961). Of course, whether the district judge abused his discretion in granting or denying a separate trial, on the facts of the case, may rarely, if ever, involve "a controlling question of law." Compare Swofford v. B & W, Inc., 336 F.2d 406, 414-415 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965), with Seven-Up Co. v. O-So Grape Co., 179 F.Supp. 167, 171-172 (N.D.Ill.1959).
 
 
 13
 Appeal dismissed for lack of appellate jurisdiction.
 
 
 
 Notes:
 
 
 [1]
 Appellants argue that such a holding would be inconsistent with our decision in Ring v. Spina, 166 F.2d 546, 549 (2d Cir.), cert. denied, 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368 (1948), an appeal from an order striking from the jury calendar an antitrust action in which plaintiff sought treble damages and an injunction. This court held that "[s]ince * * * we view the action as one of legal aspect, entitling the plaintiff to a jury trial on demand, our case is clearly within the Ettelson ruling and the order is appealable."
 Ring v. Spina was decided before the Supreme Court held explicitly in the City of Morgantown and Baltimore Contractors cases, supra, that the Enelow-Ettelson doctrine does not apply where the whole case would have been before an equity court. To the extent that Ring v. Spina is inconsistent with our decision here, we think that it has been overruled by those cases. But cf. Alexander v. Pacific Maritime Ass'n, 332 F.2d 266 (9th Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964); Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 372 (1961).
 
 
 FRIENDLY, Circuit Judge (concurring):
 
 14
 So long as Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942) stand, federal appellate courts will necessarily have difficulty in determining whether an appeal is attracted by the rule of those cases or the contrary one of City of Morgantown v. Royal Ins. Co., Ltd., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949) and Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 182-185, 75 S.Ct. 249, 99 L.Ed. 233 (1955), when a complaint seeks both legal and equitable relief. The best solution of an essentially insolvable problem appears to be the dominant purpose test, with any fair doubt being resolved against the claim that the action was predominantly one at law. This was our ruling in Ring v. Spina, 166 F.2d 546, 548-549 (2 Cir.), cert. denied, 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368 (1948), where we held the appellant's burden had been met, despite an incidental demand for an injunction;[1] such also is the decision in Alexander v. Pacific Maritime Ass'n, 332 F.2d 266 (9 Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964), where the court held it had not been, despite an incidental demand for money damages. I agree that it also has not been here, although the case is somewhat closer than Alexander. Plaintiffs' demand for a jury trial does not establish they are entitled to one.
 
 
 
 Notes:
 
 
 [1]
 Since Judge Clark expressly stated that "if we were to hold the action predominantly equitable in character, our decision should be a dismissal of the appeal, rather than affirmance of the order." I see no occasion for intimating that a judge, particularly one so knowledgeable in matters of this sort, may not have anticipated the later decisions inMorgantown and Baltimore Contractors, or for suggesting that the authority of the decision has been in any way impaired.