USM CORPORATION,
Plaintiff-Appellant,

v.

GKN FASTENERS, LIMITED,
Defendant-Appellee.

No. 77–1433.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1977.

Decided April 6, 1978.

Motion Denied July 12, 1978.
See 578 F.2d 21.

Gerald D. Hosier, Chicago, Ill., with whom Raymond P. Niro, Hosier, Niro & Daleiden, Ltd., Chicago, Ill., Ansel B. Chaplin, Chaplin, Barzun & Casner and Richard B. Megley, Boston, Mass., were on brief, for plaintiff-appellant.

Gael Mahony, Boston, Mass., with whom Winifred I-Bin Li, Hill & Barlow, Boston, Mass., Victor S. Friedman and Fried, Frank, Harris, Shriver & Jacobson, New York City, were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

In this action, we must first determine whether the shoals of the finality doctrine and the *Enelow-Ettelson* rule [1] have effec-

---

1. *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson* *v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942).

tively scuttled the appeal of USM to this court.

Plaintiff-appellant USM filed suit in Massachusetts Suffolk County Superior Court for breach of contract, tortious interference with a contractual relationship, and tortious conspiracy to induce breach of contract and to defraud USM. Defendant-appellee GKN removed the case to the United States District Court for Massachusetts. *See* 28 U.S.C. § 1441. GKN moved the district court to stay USM's action pending arbitration of the agreement (which has an arbitration clause, *infra*, at 20, n. 4) under which USM brought suit. The district court granted the stay pursuant to 9 U.S.C. §§ 3, 201, 202, 208. USM appeals the propriety of the stay. GKN has responded, in part, by asserting that we are without jurisdiction to hear the appeal because the stay is not a final order appealable under 28 U.S.C. § 1291, nor, because of the niceties of the so-called *Enelow-Ettelson* rule, is the stay appealable as an interlocutory order granting an injunction under 28 U.S.C. § 1292(a)(1).

We note at the outset that we do have jurisdiction to decide whether we can hear the appeal. *Ex parte McCardle*, 74 U.S. 506, 514 (7 Wall.), 19 L.Ed. 264 (1869). As a general rule, appeals are permissible only from final orders. *See* 28 U.S.C. § 1291. Recognizing that the final judgment rule might prove impracticable or inequitable, Congress provided for specific statutory exceptions to the requirement of finality. 28 U.S.C. § 1292. We are confronted with the threshold question of whether the appeal in the instant case is embraced within either of these provisions.

We have ruled in the past that a stay issued by a district court so as to permit arbitration is not a final order within the meaning of 28 U.S.C. § 1291 unless one of two criteria is met: (1) the stay disposes of an independent or collateral claim of right which will evade review if not immediately appealable, such as to be embraced by the "collateral right rule," *Cohen v. Beneficial*

*Loan Corp.*, 337 U.S. 541, 546–547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Limbach Co. v. Gevyn Const. Corp.*, 544 F.2d 1104, 1106 (1st Cir. 1976), *cert. denied*, 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594 (1977); or (2) immediate review is necessary to resolve issues "fundamental to the further conduct of the case," *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 153, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964) (quoting *United States v. General Motors Corp.*, 323 U.S. 373, 377, 65 S.Ct. 357, 89 L.Ed. 311 (1945)). *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 185 (1st Cir. 1972).

We find the holding in *Gillespie* to be inapposite here: that case involved the appeal from a court order dismissing certain counts while proceeding with certain others. The Supreme Court formulated its holding to address that precise situation. The Court likened its action to that authorized under 28 U.S.C. § 1292(b), whereby a district court certifies controlling questions of law to the appellate court so that the case may be properly resolved during the ongoing litigation. *Gillespie, supra*, 379 U.S. at 154, 85 S.Ct. 308. In the case confronting us, the *entire* action is being stayed. Obviously, therefore, there will be no further conduct of the case until such time as the stay is lifted. We, accordingly, restrict our analysis to a determination of whether an independent right, collateral to the main action, requires immediate review at the peril of forever escaping appellate scrutiny.

In urging us to find the stay appealable under 28 U.S.C. § 1291, USM encourages us to stretch the contours of finality, so as to expand the jurisdiction of this court. However, in so doing, it collides head-on with two overriding policies of longstanding and widespread acceptance: disapproval of fragmentary appeals, *Cobbledick v. United States*, 309 U.S. 323, 324–325, 60 S.Ct. 540, 84 L.Ed. 783 (1940), and strong endorsement of giving effect to arbitration clauses, *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). USM bases its contention that the stay is appealable under 28 U.S.C. § 1291 on

its claimed denial of a right to a jury trial and by attempting to characterize the 9 U.S.C. § 3 stay order as a 9 U.S.C. § 4 order compelling arbitration (which is appealable as a final order, *see County of Middlesex v. Gevyn Construction Corp.*, 450 F.2d 53 (1st Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1176, 31 L.Ed.2d 232 (1972)).

We deal first with USM's attempt to treat the section 3 stay as a section 4 order compelling arbitration. Assuming USM's arguments to be true, *viz.*, that the stay order is, for all practical purposes, equivalent to an order compelling arbitration, the two statutory sections, 9 U.S.C. §§ 3 and 4, have received different treatment as regards finality. We have recognized the incongruity of these legal distinctions, even terming them "medieval if not Byzantine peculiarities of this area of the law," *New England Power Co. v. Asiatic Petroleum Corp., supra*, 456 F.2d at 189, and yet are constrained to adhere to the legal precedent as enunciated. Unless a section 3 stay order can be brought within the *Cohen* or *Gillespie* rule, it will not be deemed a final order for purposes of 28 U.S.C. § 1291. We repeat what the Supreme Court stated in *Baltimore Contractors v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955):

> The Congress is in a position to weigh the competing interests of the dockets of the trial and appellate courts . . . . This Court, however, is not authorized to approve or declare judicial modification. It is the responsibility of all courts to see that no unauthorized extension or reduction of jurisdiction, direct or indirect, occurs in the federal system. (cite omitted)

Congress has expressed a policy against piecemeal appeals. 28 U.S.C. § 1291. The concept of finality, while not absolute, *see Cohen v. Beneficial Loan Corp., supra*, is not infinitely expandable. We shall resist responding on an *ad hoc* basis to pleas urging us to find "finality" in every disposition by a district court of motions brought before it, particularly where, as here, we are asked to do so by totally recasting the motion upon which the district court acted.

We will not perform reconstructive surgery on the district court's order. The motion brought and acted upon was a request for a stay, 9 U.S.C. § 3, and not a motion compelling arbitration, 9 U.S.C. § 4. We have no doubt but that frequently indirect results attend a court's action. That provides no rational basis, however, for disassembling a statute and rebuilding it to conform with any possible reverberation alleged by a disgruntled party. We note what the Supreme Court stated in *Morgantown v. Royal Ins. Co.*, 337 U.S. 254, 258, 69 S.Ct. 1067, 1069, 93 L.Ed. 1347 (1949), "Many interlocutory orders . . . may determine the outcome of litigation, but they are not for that reason converted into injunctions." [2]

USM, citing *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), claims that, by submitting to arbitration, it is denied the right to a jury trial on its contract claim.[3] It relies on the following language, "to allow claims of equitable origins to be tried ahead of legal ones . . . has the same effect as an equitable injunction of the legal claims." *Id.* at 507, 79 S.Ct. at 954. USM's reliance is misplaced. The district court's stay in the instant case does not permit the *trial* of equitable claims ahead of legal ones; rather it allows the parties to engage in previously agreed upon *non-judicial* arbitration proceedings. The statute is clear: once the district court is satisfied that the issue is referable to arbitration, it "shall" stay the

---

**2.** We distinguish that line of cases which has converted silence by a district court with respect to a pending request for temporary injunctive relief into the denial of such request and thus subject to appeal under 28 U.S.C. § 1292(a)(1). *See e. g., Jones v. Diamond*, 519 F.2d 1090, 1096 (5th Cir. 1975); *Clean Air Coordinating Committee v. Roth-Adam Fuel Co.*, 465 F.2d 323, 325 (7th Cir. 1972), *cert. denied*,

409 U.S. 1117, 93 S.Ct. 895, 34 L.Ed.2d 701 (1973); *Weiss v. Duberstein*, 445 F.2d 1297, 1299 (2d Cir. 1971); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

**3.** We underscore the point which USM chooses to overlook, namely, that it bargained for precisely this result by agreeing to arbitration.

action until arbitration is complete. 9 U.S.C. § 3. In other words, there are to be *no* court proceedings (on matters subject to the arbitration clause) until the arbitration, which was contracted for by both parties, is complete. It is only when the non-judicial arbitral proceedings are closed that a court is faced with the *Beacon Theatres* mandate requiring jury trial of legal issues prior to court determination of equitable issues.

Moreover, USM states too much: the order which the court entered, staying further proceedings pending the outcome of arbitration, does not finally dispose of USM's right to a jury trial. Should the prevailing party in the arbitration proceedings need to seek enforcement of the award, appeal to the district court under 9 U.S.C. §§ 4, 201, 207 is permitted. A jury could then be empanelled to decide if the other party were in default of the decree. Certain defenses to the arbitration clause could also be submitted to a jury. *See* 9 U.S.C. §§ 4, 201, 207.

USM also contends that, by staying not only the contract claim but its tort claims as well, the court denied it the important right to jury trial on those claims. Again, we note that the right to a trial by jury on the tort claims (assuming they are not rendered moot) has not been denied, but merely postponed. It remains "open, unfinished . . . inconclusive . . . ." *Cohen v. Beneficial Loan Corp., supra*, 337 U.S. at 546, 69 S.Ct. 1221, and, therefore, not subject to intrusion by appeal at this time.

In this case, particularly since the tort claims depend heavily on the resolution of the contract claim, which the district court found to be arbitrable, we cannot say that USM's right to a jury determination of its tort claims will be irreparably injured by the delay resulting from arbitration. In a slightly different context, we upheld the propriety of staying tort and contract actions pending the outcome of arbitration. *Acevedo Maldonado v. PPG Industries, Inc.*,

514 F.2d 614, 616 (1st Cir. 1975). While that case rested on the broad arbitration clause in the agreement, were we to pass on this issue directly (which, because we find that we are without jurisdiction to hear the appeal, we shall not do), we might find the language in the instant arbitration clause similarly inclusive.[4] In any case, the postponement of a jury trial is not sufficient to bring USM's complaint within the "collateral right rule."

USM also contends that it is being forced to submit to arbitration in England against its will and that this right will be forever prejudiced if an appeal of the stay order is not heard now. As we stated in *New England Power, supra*, 456 F.2d at 185,

No important right, other than the "right" to stay arbitration, will be irreparably lost by our declining to review the district court's action at this juncture.

The fact that USM may have to suffer the inconvenience of arbitration in England is not the type of important right intended to fall within the ambit of the *Cohen* collateral right ruling. The Supreme Court has expressed its strong endorsement of giving full force to the Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and of requiring parties engaged in international commerce to abide by their promises to arbitrate in a particular forum. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13–15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Scherk v. Alberto-Culver Co., supra*, 417 U.S. at 510–511, 516–520, 94 S.Ct. 2449, 41 L.Ed.2d 270; *Sam Reisfeld & Son Import Co. v. S. A. Eteco*, 530 F.2d 679, 680–681 (5th Cir. 1976). USM's argument to this court that a hardship will ensue should it be forced to arbitrate in England is precisely the type of contention which should have been resolved prior to signing the arbitration agreement.

Indeed, if every party who signed an arbitration clause could later come into court and attempt to defeat the clause on

---

4. The clause reads: "In case of *any* dispute or question arising between the parties hereto during or after the termination of this Agreement with reference to the interpretation of their *respective rights or liabilities* or as to the *amount of royalty* to be paid in respect of any license to be granted under Clauses 2 and 3 hereof or *otherwise under this Agreement* the same shall be referred to a single arbitrator . . . ." (emphasis supplied)

the basis of its unfairness or unreasonableness, the advantages attendant on arbitration rather than litigation would be largely lost. A party's right to defeat an arbitration clause for specifically recognized reasons is explicitly protected in the statute. If the clause was the product of fraud, coercion, or such legal or equitable grounds which would give rise to revocation of a contract, the clause can be repudiated. 9 U.S.C. §§ 2, 4; *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Lummus Co. v. Commonwealth Oil Ref. Co.,* 280 F.2d 915, 923–924 (1st Cir.), *cert. denied*, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960).

We, accordingly, find that the stay is not appealable under 28 U.S.C. § 1291.

We now examine whether the stay can be characterized as an interlocutory order granting an injunction, appealable under 28 U.S.C. § 1292(a)(1). A stay issued by a court, deferring a case on its docket until a later date, would seem to lack the incidents necessary to be termed an injunction. However, the *Enelow-Ettelson* rule construes a stay by a court of its own proceedings as an injunction provided (1) the original cause of action could have been maintained only at law in the days preceding the single form of action, and (2) the stay is sought to permit the interposition of an equitable defense.[5] Given that the historic division between Chancery and courts of law has thus survived in some fashion the joinder of law and equity accomplished by the adoption of the Federal Rules of Civil Procedure in 1938, we must analyze the original cause of action brought by USM to determine whether it is to be characterized as an action at law or a suit in equity. Should it be determined that it is an action at law, the stay, which was issued so that GKN could raise the equitable defense of arbitration,[6] would be considered an injunction under 28 U.S.C. § 1292(a)(1) and, as such, appealable. If the original action brought by USM is characterized as an equitable one, no appeal will lie since, harking back to the days prior to the merger of law and equity, the stay would be viewed as the action of an equity court's ordering its own docket.[7]

The complaint filed by USM is couched in terms of traditional legal issues: contract and tort. However, the relief requested includes a hybrid of equitable and legal remedies. USM has prayed for a preliminary injunction, specific performance, accounting, declaratory relief, and damages. Other courts, when confronted with a similar problem of characterization, have applied one of two tests, the dominant purpose test or the historical test.[8]

Under the dominant purpose test, the complaint falls to the equitable side. The cause of action is legal, but the equitable relief sought is neither incidental nor ancillary to the legal claim. The prayer for relief includes fifteen separate requests; we cannot fairly construe the lengthy requests for, *inter alia*, injunctive relief, specific performance, and rescission, to be "merely incidental," *Standard Chlorine of Delaware, Inc. v. Leonard*, 384 F.2d 304, 309

---

5. This shorthand statement of the *Enelow-Ettelson* rule was first articulated by Judge Tuttle in *Jackson Brewing Company v. Clarke*, 303 F.2d 844, 845 (5th Cir. 1962), and has been widely cited in intervening years. *See, e. g., New England Power Co. v. Asiatic Petroleum Corp., supra*, 456 F.2d at 187, n. 5.

6. The interposition of an arbitration agreement has been construed an equitable defense at least since *Shanferoke Corp. v. Westchester Corp.*, 293 U.S. 449, 452, 55 S.Ct. 313, 79 L.Ed. 583 (1935).

7. *See generally* 2 Moore's Federal Practice ¶ 2.05 at 331–354 (2d ed. 1977); 9 *Id.*, ¶ 110.-20[3] at 240–246 (2d ed. 1975); P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System, 1563–1564 (2d ed. 1973); 4 C. Wright & A. Miller, Federal Practice and Procedure §§ 1041–1045 at 137–157 (1969); 16 *Id.*, § 3923 at 48–67 (1977); 11 A.L.R.Fed. 640, *Arbitration—Appealability of Stay Order* (1972).

8. *Schine v. Schine*, 367 F.2d 685, 688 (2d Cir. 1966) (Friendly, J., concurring); *Alexander v. Pacific Maritime Ass'n*, 332 F.2d 266 (9th Cir.), *cert. denied*, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964); *see Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 182–185, 75 S.Ct. 249, 99 L.Ed. 233 (1955).

(2d Cir. 1967). There appears to be a growing tendency, when confronted with a hybrid of legal and equitable claims for relief, to treat the matter as equitable for purposes of the *Enelow-Ettelson* rule. *See, e. g., Stateside Machinery Co., Ltd. v. Alperin,* 526 F.2d 480, 483 (3d Cir. 1975); *Danford v. Schwabacher,* 488 F.2d 454, 457 (9th Cir. 1973); *Thompson v. House of Nine, Inc.,* 482 F.2d 888, 890 (5th Cir. 1973); *Chapman v. International Ladies' Garment Workers' Union,* 401 F.2d 626, 629 (4th Cir. 1968); *Standard Chlorine, supra,* 384 F.2d at 309; *Schine v. Schine,* 367 F.2d 685, 688–689 (2d Cir. 1966).

Applying the historical analysis, once again, the complaint is best cast as an equitable one. We recognize that this historical litmus test entails a certain degree of arbitrariness and fiction, but, so long as the *Enelow-Ettelson* rule retains vigor, we see no alternative. Prior to the formal merger of law and equity in 1938, actions were relegated to either the law or equity side. Although originally this called for the dismissal of a case erroneously brought on one side which should have been brought on the other, a practical accommodation had developed, so that by 1915 (culminating with the Law and Equity Act, Jud. Code §§ 274a, 274b, 28 U.S.C. §§ 397, 398), courts freely allowed the transfer of actions back and forth between law and equity. The most liberal step appears to have been taken in the case of *Plews v. Burrage,* 274 F. 881, 883–885 (1st Cir. 1921), where the court allowed the plaintiff to plea in replication an equitable response to defendant's legal answer. Other cases had permitted plaintiff to interpose an equitable plea in replication only when defendant had first responded to the legal claim with an equitable answer. The procedure was, nonetheless, highly stylized. Plaintiff was *not* allowed the seemingly logical step of pleading both legal and equitable claims in his original plea until the adoption of the Federal Rules of Civil Procedure.[9]

Into this historical context, we now place plaintiff USM's complaint. Because USM prayed for both legal and equitable relief in its original complaint, the case would have been filed in the equity court. That court, having jurisdiction over the equitable claims, would have asserted jurisdiction over the entire complaint under the doctrine known as "equitable clean up."[10] We, therefore, view the action before us as one properly brought in equity and, therefore, not appealable under *Enelow-Ettelson.*

We recognize the anomaly of broadly construing a case as legal for purposes of determining right to a jury trial under *Beacon Theatres* and its progeny and construing strictly for purposes of determining appealability under *Enelow-Ettelson.* There is, nonetheless, a solid basis for this. The right to a jury trial is guaranteed by the seventh amendment and, as such, deserving of stringent safeguards. *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Fed.R.Civ.P. 38(a); *cf.* 16 C. Wright & A. Miller, Federal Practice and Procedure, *supra,* § 3923 at 61. The *Enelow-Ettelson* rule provides, in the form of a vestigial holdover, an errant exception to the general requirement of finality. As an exception—and one so roundly criticized by authorities[11]—it is properly constricted to as narrow a compass as possible.

We understand that USM, recognizing the hurdle imposed by the *Enelow-Ettelson* rule, has filed a motion with the district court for permission to amend the complaint, eliminating several of its specific requests for equitable relief (though, as pointed out by GKN, USM has retained its request for all relief the court finds appropriate; this right is, of course, protected in

---

**9.** *See* 2 Moore's Federal Practice ¶ 2.05 at 331–348 (2d ed. 1977); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1041 at 137–140 (1969).

**10.** *See* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1045, at 156–157 (1969).

**11.** *See, e. g., Baltimore Contractors, Inc. v. Bodinger,, supra,* 348 U.S. at 184–185, 75 S.Ct. 249; *New England Power Co. v. Asiatic Petroleum Corp., supra,* 456 F.2d at 189; 9 Moore's Federal Practice, *supra,* ¶ 110.20[3] at 244–246; 4 C. Wright & A. Miller, Federal Practice and Procedure, *supra,* § 1045 at 156–157.

statutory form, Fed.R.Civ.P. 54(c)). We intimate no view on how the district court might dispose of this motion. Nor do we express any view as to any possible *nunc pro tunc* effect such amended pleadings (if there be any) might have on the jurisdiction of this court.

 In response to USM's query of whether special permission from us is needed for the district court to entertain the motion to amend pleadings, since we determine that we are without jurisdiction, the district court, which has not acted on the motion, is not divested of jurisdiction over the complaint and is free to act upon it.[12]

 In yet another attempt to escape *Enelow-Ettelson's* vise, USM urges us to conclude that there is, in fact, no basis for the district court to exercise its equitable jurisdiction and that, therefore, the equitable claims should present no bar to this appeal. We dismiss this argument; it is not for us to prejudge or second-guess how a district court might decide to exercise *vel non* its equity powers.

 USM finally attempts to invoke the jurisdiction of this court by framing its appeal as a petition for writ of mandamus. *See* 28 U.S.C. § 1651. The granting of a writ of mandamus is an extraordinary remedy, to be limited to extraordinary situations. Mandamus is appropriate to correct the improper assumption of judicial power by a district court or to correct a clear abuse of discretion. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953). The writ may not be invoked to obtain review of an otherwise unreviewable interlocutory order, *Abrams v. McGohey*, 260 F.2d 892, 894 (2d Cir. 1958), or where the right to the writ is other than "clear and indisputable." *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 43 L.Ed. 559 (1899). *See also* 9 Moore's Federal Practice, *supra*, ¶ 110.20[4.–2] at 250; *cf. id.*, ¶ 110.28 at 302 *et seq.* Here, plaintiff has not established that its right to the writ conforms with the requisites (*see* discussion, *supra, re,* right to jury trial) or that the district court has abused its discretion so as to warrant the issuance of the extraordinary writ.

*Appeal dismissed.*

---

12. *See* 9 Moore's Federal Practice ¶ 203.11 at 734–737 (2d ed. 1975).