Irwin BOTTO, Max Sirlin and Milton Lewis, Employer Trustees of Plumbers Local Union No. 457, Pension Trust Fund, Plaintiffs,

v.

Robert J. FRIEDBERG, Fred Formica and John B. Murray, Union Trustees of Plumbers Local Union No. 457, Pension Trust Fund, Defendants.

No. CV 82–0419.

United States District Court, E.D. New York.

July 8, 1982.

Skoy & Lowell, Mineola, N.Y., for plaintiffs; Elliot B. Lowell, Robert L. Pryor, Mineola, N.Y., of counsel.

Speno, Goldberg, Moore, Margules & Corcoran, Mineola, N.Y., for defendants; Robert W. Corcoran, Mineola, N.Y., of counsel.

Memorandum of Decision and Order

MISHLER, District Judge.

This action arises from the failure of the trustees of a pension trust fund to reach agreement regarding a proposed increase in retirement benefits. The parties to this action are the trustees of Plumbers Local Union No. 457 Pension Trust Fund ("Trust Fund"). Plaintiffs Irwin Botto, Max Sirlin

and Milton Lewis are the employer trustees of the Trust Fund ("Employer Trustees"), as designated by Association of Employing Plumbing Contractors of Nassau County, Inc., a New York membership corporation ("Employer Association"). Defendants Robert J. Friedberg, Fred Formica and John B. Murray are the union trustees of the Trust Fund ("Union Trustees"), as designated by Plumbers Local Union No. 457 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, a labor union with offices in Mineola, New York ("Union").

A certain trust agreement[1] which governs Trust Fund matters provides for the appointment of an impartial umpire by the court if the trustees fail to agree on "a matter relating to the administration of the Pension Trust Fund."[2] The arbitration provision of such trust agreement is, in turn, mandated by Section 302(c)(5)(B) of the Labor Management Relations Act of 1947 ("LMRA"); 29 U.S.C. § 186(c)(5)(B) which requires that an agreement of this kind provide for arbitration in matters of administration. The question before this court is whether the proposed 17 percent increase in benefits is "a matter relating to administration" for purposes of the arbitration provision of the trust agreement or LMRA § 302(c)(5)(B). The parties posed differing interpretations of the term "administration". In addition, the Employer Trustees argued that the question of the proposed increase in benefits is not a proper issue for decision by the trustees pursuant to the fiduciary responsibility provisions of §§ 404 and 406 of Employees Retirement Income Security Act of 1974 ("ERISA"); 29 U.S.C. §§ 1104(a)(1) and 1106(b)(2).

Employer Trustees requested summary judgment pursuant to Fed.R.Civ.P. 56 declaring (1) that the proposed increase is not an arbitrable matter under the trust agreement and (2) that an umpire cannot be appointed. Union Trustees cross-moved for summary judgment (1) declaring that a deadlock exists that is subject to arbitration under the trust agreement and (2) naming an impartial umpire.

The court has jurisdiction of this action pursuant to ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B) and 28 U.S.C. § 1331, based upon questions arising under 29 U.S.C. §§ 186(c)(5), 1104(a)(1) and 1106(b)(2).

As more fully discussed below, arbitration is not available to resolve the question of increased benefits before this court for two reasons. First, the proposed increase in retirement benefits is not a matter of Trust Fund administration (or "relating to the administration") that is subject to arbitration under the trust agreement or under LMRA § 302(c)(5)(B). Second, according to a recent decision by the United States Supreme Court, *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672, *rehearing denied,* 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981), the proposed increase is not an appropriate matter for decision by Trust Fund trustees in the absence of an agreement on this subject by the collective bargaining agents of Employer Association and Union. The Supreme Court found that this prohibition was imposed by the fiduciary responsibility provisions of § 302 LMRA; 29 U.S.C. § 186 and ERISA §§ 404 and 406; 29 U.S.C. §§ 1104, 1106. As a result, the provisions set forth in the trust agreement regarding deadlock and arbitration are inapplicable to this matter and the choice of an umpire by this court is unnecessary. *See: Barrett v. Miller,* 276 F.2d 429 (2d Cir.1960). Accordingly, plaintiffs Employer Trustees' motion for summary judgment is granted; defendants Union Trustees' cross-motion is denied.

---

1. The Agreement and Declaration of Trust dated October 6, 1953 entered into by Union and the predecessor in interest of Employer Association, (Exhibit A to Plaintiffs' Complaint), as amended May 3, 1966 (Exhibit A to Defendants' Answer).

2. Article IV, § 8(b) of the Agreement and Declaration of Trust dated October 6, 1953, as amended, *see* n. 1, *supra.*

*Facts*

The uncontested facts before the court are as follows:

1. Union and the predecessor in interest of Employer Association entered into a Collective Bargaining Agreement dated May 1, 1953 ("Collective Bargaining Agreement"), which established, *inter alia,* a pension program, including the creation of Pension Fund, Plumbers Local 457, and which required payment by employer members to the Pension Fund of a stated percent of the gross weekly payroll for members of the Union.

2. Union and the predecessor in interest of Employer Association entered into an Agreement and Declaration of Trust, dated October 6, 1953 (Exhibit A to Plaintiffs' Complaint) and as amended May 3, 1966 (Exhibit A to Defendants' Answer), ("Trust Agreement"), providing for the Pension Fund to be held in trust, designating Employer Trustees and Union Trustees, and setting forth the powers and responsibilities of the trustees and the terms under which the two groups of trustees would effectuate the pension program to be established under the Collective Bargaining Agreement.

3. Article IV, § 8(a) of the Trust Agreement, as amended May 3, 1966, provides that at least two Union Trustees and two Employer Trustees are required for a quorum and that action on any question is to be decided by a majority vote, but in such event, the concurring vote shall not be less than four Trustees. Arbitration provisions are set forth at Article IV, § 8(b) of the Trust Agreement as follows:

> (b) In the event of a deadlock, resulting from the failure of the Employer and Union Trustees to agree on a *matter relating to the administration of the Pension Trust Fund,* then and in that event, the Trustees shall appoint an impartial umpire to decide such dispute, whose decision shall be final and binding upon the Trustees, and upon failure of the Trustees to agree within a reasonable length of time on the selection of an impartial umpire, either the Employer or Union Trustees may petition the United States District Court for the Eastern District of New York for the appointment of such impartial umpire." (emphasis supplied).

4. A special meeting of the trustees was held on November 17, 1981 ("Meeting") to discuss the Union Trustees' proposal for increasing, by 17 percent, the benefits to be paid from the Trust Fund to present and future beneficiaries. The three Union Trustees present voted in favor of the proposal. One Employer Trustee (Max Sirlin) was absent due to illness; the two remaining Employer Trustees were present and voted against the proposed increase. Attorneys for both groups of trustees were also present at the Meeting.

5. At the Meeting, Milton Lewis, who was asked to speak on behalf of all the Employer Trustees, stated that they "felt that to increase benefits at this time would not be acting in a prudent fashion and would increase the liabilities which would have to be assumed by the Contractor." He also stated that the members of the Employer Association did not vote on this decision or give direction on this question to the Employer Trustees. Mr. Lewis said that the position of Employer Trustees was based upon their own judgment.[3]

6. Robert Friedberg, Chairman of the Meeting, declared an impasse following the vote concerning the proposed increase in benefits. Attorneys for both parties advised the assembled trustees that appointment of an umpire for arbitration was appropriate and that names of proposed umpires would be submitted by each group to the other.[4]

7. On November 24, 1981 a list of names of proposed umpires was submitted to the Employer Trustees on behalf of the Union Trustees.

*Discussion*

I

■ The Trust Agreement, as originally adopted in 1953, provided for arbitration

---

**3.** The Minutes of the Meeting (Exhibit C to Affidavit in Support of Defendants' Motion for Summary Judgment).

**4.** *Id.*

pursuant to LMRA § 302(c)(5)(B).[5] Employer contributions to an employee benefit plan, including a retirement or pension plan, represent an exception from the general rule set forth at LMRA § 302(a)[6] prohibiting employer payments to any employee representative. Section 302(c)(5)(B) of LMRA permits such employer payments provided, *inter alia,* that the funds are held in trust pursuant to a written trust agreement, that an equal number of trustees be designated by the employer and the union and that the trust agreement provide for the appointment of an umpire "in the event the employer and employee groups deadlock on the administration of such fund."[7] Thus, the language of the Trust Agreement regarding arbitration ("a matter relating to . . . administration"), (Art. IV, § 8(b)), tracks the statutory language ("on the administration").

The Employer Trustees' first argument is that the question of increased benefits, as proposed by the Union Trustees, is not a matter "relating to the administration" of the Trust Fund and therefore not subject to arbitration under the Trust Agreement. Similarly, the Employer Trustees claim that arbitration is not required under LMRA § 302(c)(5)(B) because disagreement on this matter is not "on the administration" of such fund. We agree.

Authority is granted to the Trustees under Section 4 of Article II of the Trust Agreement as originally adopted, for "determination of benefits *and* administration of the program." (emphasis supplied). Thus, Employer Trustees and Union Trustees intended that the determination of benefits (and certain other matters) be clearly separate from, and subject to different treatment than, the day-to-day management of the Trust Fund and benefit program. This distinction is supported by the conclusion of the Court of Appeals for the Tenth Circuit in *Adler v. Hughes,* 570 F.2d 303 (10th Cir.1978), where the court found that the question of employer contributions was not an administrative matter.[8] 570 F.2d at 307. *See also, Bath v. Pixler,* 283 F.Supp. 632, 635 (D.Colo.1968).

In contrast, umpires have been appointed to arbitrate administrative matters such as payments to an insurance broker, *Mahoney v. Fisher,* 277 F.2d 5, 6 (2d Cir.1960), the method of appointing trustees, bonding for certain union employees and replacement of a fund manager, *Singleton v. Abramson,* 336 F.Supp. 754 (S.D.N.Y.1971); *but see, Petition of Feldman,* 165 F.Supp. 190 (S.D.N.Y.1958) (umpire appointed to resolve questions of increased benefits where trust agreement granted authority to increase benefits, but without discussion by the court as to whether issue was one of administration).

The proposed 17 percent increase in benefits would, if adopted, result in a clear shift in the existing balance between employer and union interests and would result in a substantial increase in the liability of the Trust Fund for unfunded vested benefits.[9]

---

**5.** 29 U.S.C. § 186(c)(5)(B).

**6.** *Id.* § 186(a).

**7.** *Id.* § 186(c)(5)(B).

**8.** In *Adler v. Hughes,* 570 F.2d 303 (10th Cir. 1978), the Court of Appeals for the Tenth Circuit affirmed the appointment of an umpire by the lower court for a non-administrative matter (employer contributions) where the broad scope of arbitration ("on any question"), set forth in the trust agreement, exceeded the statutory mandate of LMRA § 302(c)(5)(B); 29 U.S.C. § 186(c)(5)(B). 570 F.2d at 308–09.

**9.** Both parties agreed that, as of the date of the Meeting, the Trust Fund had assets of approximately six million dollars. (Plaintiffs' Cross Motion for Summary Judgment, ¶ 22, p. 7; Defendants' Affidavit in Support of Motion for Summary Judgment, ¶ 9, p. 4–5). Plaintiffs alleged that the Trust Fund liability for vested benefits was in excess of nine million dollars, producing an unfunded liability for vested benefits of more than three million dollars (Plaintiffs' Cross Motion for Summary Judgment, ¶ 22, p. 7) and that the proposed 17 percent increase in benefits, if adopted, would increase the unfunded vested liability of the Trust Fund by "a minimum of $1,530,000" (Plaintiffs' Cross Motion for Summary Judgment, ¶ 23, p. 7). There was no indication that the cost of the proposed 17 percent increase in benefits would be paid out of an immediate increase in contributions from Employer Association, thereby

This court does not address the question as to whether such increase is prudent. We find that the question of the proposed increase in benefits is not a matter of day-to-day Trust Fund administration. The question is not, therefore, subject to arbitration under LMRA § 302(c)(5)(B). Further, according to the distinction made in Article II, § 4 of the Trust Agreement between the determination of benefits and administration of the program, the proposed increase in benefits is not to be treated as an administrative matter. Accordingly, arbitration under the Trust Agreement is not available to resolve this matter and the appointment of an umpire is not necessary.

## II

The second argument of the Employer Trustees is that pursuant to the fiduciary responsibility provisions of ERISA,[10] the trustees are prohibited from deciding the question of the proposed 17 percent increase and that where a subject is not properly before the trustees, the provisions concerning arbitration under the Trust Agreement do not apply. Although the Employer Trustees' motion for summary judgment can be granted solely on the ground previously discussed, the parties should not be misled as to future attempts to resolve the question of increased benefits. The provisions of LMRA and ERISA do not permit the disposition of questions by pension fund trustees who are cast, for that purpose, in the roles of collective bargaining agents.

Certain duties and responsibilities are imposed under ERISA which restrict a trustee's area of responsibility as a designated representative for the resolution of pension matters pursuant to LMRA § 302(c)(5). The fiduciary responsibility provisions of ERISA became effective January 1, 1975 (with certain exceptions which are not relevant here) and pre-existing retirement programs, such as the Trust Fund, were required to comply.[11] The trustees herein are fiduciaries [12] with respect to the Trust Fund for purposes of ERISA by virtue of the discretionary responsibilities granted to them under Article II, Section 4 of the Trust Agreement. Accordingly, each Employer Trustee and Union Trustee is required:

> [T]o discharge his duties with respect to a plan *solely in the interest of the participants and beneficiaries* ... for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan ... ERISA 404(a)(1)(A); 29 U.S.C. § 1104(a)(1)(A). (emphasis added).

Each trustee is similarly subject to the following prohibition:

> (b) A fiduciary with respect to a plan shall not—
>
> . . . .
>
> (2) in his individual or in any other capacity act in any transaction involving the plan *on behalf of a party (or represent a party)* whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries .... ERISA § 406(b)(2); 29 U.S.C. § 1106(b)(2). (emphasis added).

In *N.L.R.B. v. Amax Coal Co., supra,* the United States Supreme Court examined the prohibitions against dual loyalty set forth at ERISA § 406(b)(2) [13] with regard to the scope of responsibility exercised by pension

---

exceeding the amount agreed to under the most recent Collective Bargaining Agreement (1982). Instead, it appeared that the cost of such significant increase would be met by the actuarial reallocation of funds presently held in the Trust Fund thus creating an increased liability for unfunded benefits. Even if such increase could be paid out of Trust Fund income so that no immediate or future increase in Employer Association contributions would be required, nonetheless, such proposed increase in benefits represents a potential shift in the union-employer relationship. In such case, the union members would achieve an additional benefit for which the employer group would not receive any consideration.

**10.** ERISA §§ 404, 406, 29 U.S.C. §§ 1104, 1106.

**11.** *Id.*

**12.** *Id.*; 29 U.S.C. § 1002(21)(A).

**13.** 29 U.S.C. § 1106(b)(2).

trustees as designated representatives for the resolution of pension matters pursuant to LMRA § 302(c)(5).[14] The issue before the Court was whether a strike to obtain participation by Amax in a national pension trust fund, where Amax would participate with others in the choice of a management trustee, would constitute improper union interference with an employer's right under LMRA to select its collective bargaining agent. Amax contended that the management trustee would, in effect, serve as its collective bargaining agent. The Court held that the union's strike activities did not interfere with the employer's freedom to select its collective bargaining agent because the pension trustee chosen by the group was prohibited by ERISA from representing the employer in collective bargaining matters. 453 U.S. at 336–38, 101 S.Ct. at 2798–99. Following a review of the legislative history of LMRA, which relies upon common law trust concepts to prohibit dual loyalty, and the stated prohibitions set forth at § 406 of ERISA, the Court specifically and emphatically distinguished between the role of a trustee (as a fiduciary to a pension trust) and that of a collective bargaining representative (as agent of the employer).[15] The Court found that decisions to be made in the collective bargaining arena cannot be made by pension fund trustees. 453 U.S. at 334, 101 S.Ct. at 2797–98.

In the case before this court, consideration by the trustees of increased benefits, in the absence of a collectively bargained agreement between Employer Association and the Union, placed the Employer Trustees in the position of dual loyalty prohibited by the Supreme Court in *Amax*. As noted above, the proposed increase in benefits would, if adopted, result in a clear shift in the existing balance between employer and union interests. In addition, Employer Association's obligation with respect to the Fund's liability for unfunded vested benefits would increase. In the absence of Employer Association's formal consent or opposition to such increase, Employer Trustees have been required to respond to the proposed increase on behalf of Employer Association and indeed, Mr. Lewis' statement, as reported, was clearly made to oppose increased costs to the contractors. Under the Supreme Court's broad language in *Amax*,[16] it was inappropriate for defendant Union Trustees to have raised this issue at the Special Meeting in the absence of a collectively bargained resolution by Employer Association and Union. Accordingly, since the issue was not properly before the trustees for consideration, the provisions of the Trust Agreement regarding deadlock and the appointment of an umpire are inapplicable. *Barrett v. Miller*, 276 F.2d 429, 431 (2d Cir.1960).

Summary judgment under Fed.R.Civ.P. 56 is appropriate here where there is no

---

14. *Id.*; § 186(c)(5).

15. The Court, in *Amax*, stated:
The atmosphere in which employee benefit trust fund fiduciaries must operate, as mandated by § 302(c)(5) and ERISA, is wholly inconsistent with [the collective bargaining] process of compromise and economic pressure. The management-appointed and union-appointed trustees do not bargain with each other to set the terms of the employer-employee contract; they can neither require employer contributions not required by the original collectively-bargained contract, nor compromise the claims of the union or the employer with regard to the latter's contributions. Rather, the trustees operate under a detailed written agreement, 29 U.S.C. § 186(c)(5)(B), which is itself the product of bargaining between the representatives of the employees and those of the employer.

452 U.S. at 336, 101 S.Ct. 2796–98. (footnotes deleted).

16. The United States Supreme Court also distinguished, in *Amax*, between pension trustees and collective bargaining agents by noting that negotiation, strikes and other economic weapons are appropriate for collective bargaining matters and that compulsory settlement through arbitration applies to pension administration. The Court's dicta in *Amax* does not require that arbitration be found to be appropriate here. Rather, *Amax* stands for the proposition that under LMRA § 302(c)(5)(B) and ERISA §§ 404(a), 406(b), matters of a collective bargaining nature are not to be resolved by pension fund Trustees and that such Trustees' scope of responsibility is severely limited to matters, such as those of an administrative nature for which arbitration is appropriate.

genuine issue as to any material fact and plaintiffs are entitled to judgment as a matter of law. Defendants' cross-motion for summary judgment is denied; plaintiffs' motion for summary judgment is granted, and it is

SO ORDERED.

The Clerk of the Court is directed to enter judgment in favor of plaintiffs as demanded in the complaint.